605 So.2d 1157 (1992)
Paul James JOHNSON, Plaintiff-Appellee,
v.
Barbara Ann JOHNSON, Defendant-Appellant.
No. 23814-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1992.
Writ Denied October 30, 1992.
Arax T. Brumfield, Baton Rouge, for defendant-appellant.
Francis M. Gowen, Jr., Shreveport, for plaintiff-appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
Barbara Ann Johnson appeals from a trial court judgment finding that she was not entitled to a portion of her former spouse's military retirement benefits. On appeal, Mr. Johnson has filed a peremptory exception, claiming that federal law precludes division of the retirement benefits under the facts of this case. For the following reasons, we affirm the trial court judgment denying a portion of Mr. Johnson's military retirement benefits to his former spouse.

FACTS
Paul Johnson, a resident and domiciliary of West Virginia, joined the Air Force in 1955. Paul and Barbara Johnson were married May 1, 1958 in South Hampton, Massachusetts. Mr. Johnson remained in the Air Force throughout the marriage. Even though Mr. Johnson was stationed at various locations during his military career, he asserted that he maintained his domicile in the state of West Virginia.
In 1972, Mr. Johnson was stationed at Barksdale Air Force Base in Bossier Parish. Mr. and Mrs. Johnson moved to the Shreveport-Bossier area at that time with their four children.
On January 17, 1975, Mr. Johnson filed for separation in Bossier Parish. A judgment of separation was signed on January 30, 1975. A judgment of divorce was entered May 5, 1976. Although, the community was not formally partitioned, the parties stipulated, at the trial of these proceedings, that the community was settled subsequent to the separation and divorce. However, no settlement occurred with respect to Mr. Johnson's military retirement benefits.
Mr. Johnson retired from the Air Force on July 31, 1985. On December 14, 1987, *1158 Mrs. Johnson filed a petition to partition the community property, alleging that the only asset of the former community was Mr. Johnson's military pension. Mrs. Johnson claimed that, under Louisiana law, she was entitled to a share of her former husband's retirement benefits.
Trial was held on June 28, 1990. On February 28, 1991, the trial court signed a judgment in favor of Mrs. Johnson, awarding her 5/18 of Mr. Johnson's monthly military retirement benefits.
In reasons for judgment, the court stated that the issue was whether to apply Louisiana or West Virginia law. The court found that Mr. Johnson was domiciled in Louisiana for three years before the divorce and that he consented to the jurisdiction of the Louisiana court when he filed for divorce in Bossier Parish. Using the formula established in Sims v. Sims, 358 So.2d 919 (La. 1978), the trial court found that Mrs. Johnson was entitled to 5/18 of Mr. Johnson's monthly retirement benefits.
On March 4, 1991, Mr. Johnson filed a motion for new trial. On May 22, 1991, judgment was entered granting the motion for new trial. The trial court rescinded its prior judgment, finding that Mr. Johnson was not a domiciliary of Louisiana, but was a domiciliary of West Virginia. Therefore, the court found that Louisiana law was not applicable to a partition of the retirement benefits. The court found that West Virginia law was the proper law to apply in distributing the former community and under West Virginia law, at the time of the dissolution of the community, Mrs. Johnson was not entitled to a share of Mr. Johnson's military retirement benefits. The court then rendered a new judgment denying Mrs. Johnson's claim for a portion of the retirement benefits.
On May 28, 1991, Mrs. Johnson filed a motion for new trial seeking to nullify the court's most recent judgment. Mrs. Johnson argued that it was error to find that West Virginia was Mr. Johnson's domicile. Mrs. Johnson also contended, however, that even if West Virginia was his domicile, it was error to conclude that she was not entitled to a share of the military retirement benefits, because West Virginia is an equitable distribution state. Also, Mrs. Johnson claimed to have new evidence ostensibly refuting Mr. Johnson's claim of domicile in West Virginia. Mrs. Johnson alleged that Mr. Johnson did not vote absentee in West Virginia as he contended. Further, she argued that Mr. Johnson did not pay income tax in West Virginia as the trial court found.
On September 19, 1991, the trial court denied Mrs. Johnson's motion for new trial.
Mrs. Johnson subsequently filed the present appeal. She contends that the trial court erred in denying her claim for a portion of Mr. Johnson's retirement benefits. Specifically, she contends that the trial court erred in finding that Mr. Johnson was domiciled in West Virginia and that he paid income tax in that state.

PEREMPTORY EXCEPTION
After the appeal was lodged in this court, Mr. Johnson, for the first time, filed a peremptory exception of prescription, no cause of action, and federal preemption. In his exception, he argued that, effective November 5, 1990, a federal preemption with respect to retirement benefits was created by 10 U.S.C. § 1408(c)(1) for any divorce, dissolution, annulment, or legal separation decree affecting a member of the military and his spouse or former spouse, issued before June 25, 1981. Mr. Johnson argues that the rationale of McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) was reinstated to apply to any decree of separation or divorce issued before June 25, 1981 which did not treat or reserve jurisdiction to treat any amount of retired pay of the member as property of the member and the member's spouse or former spouse.
Mr. Johnson contends that because the separation and divorce judgments in this case did not reserve jurisdiction to treat military retirement as property of Mr. and Mrs. Johnson, an action to divide such benefits would not be proper at this late date.
When Mr. Johnson's exception was filed in this court, we directed that a ruling on *1159 the exception would be referred to a decision on the merits of the case. Having now fully considered the exception, we find that the provisions of 10 U.S.C. § 1408(c)(1) operate to preclude division of Mr. Johnson's military retirement benefits. Accordingly, the peremptory exception will be sustained and Mrs. Johnson's suit dismissed.
The function of a peremptory exception is to have the plaintiff's action declared legally nonexistent or barred by the effect of law, and hence the exception tends to dismiss or defeat the action. LSA-C.C.P. Art. 923. Because Mr. Johnson's exception is in the nature of an exception of no cause or right of action, due to his claim of federal preemption, the exception may be raised for the first time on appeal. LSA-C.C.P. Art. 927.
In this case, a judgment of separation was signed January 30,1975. In that judgment, the community was dissolved and the plaintiff and defendant were recognized and decreed to be the owners of an undivided one-half interest in and to any and all of the property acquired during the existence of the community. A divorce judgment was signed May 5, 1976. Neither judgment included a partition of the community property or other adjudication as to what property was contained in the community. Further, neither the separation nor the divorce judgment specifically reserved jurisdiction to treat retirement benefits as community property.
At the time of this separation and divorce, some states were treating military retirement benefits as community property and were applying community property law to the division of the benefits between the former spouses. In fact, Louisiana courts had held that a former spouse was entitled to a community share of the other spouse's military retirement pay when the right to such benefits was acquired during the marriage. See for example, Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975). However, on June 26, 1981, the United States Supreme Court announced, in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), that military retirement was not subject to division under state community property regimes.
In 1982, in response to McCarty, supra, the Congress enacted the Uniformed Services Former Spouses Protection Act (USFSPA) which legislatively overruled McCarty, supra. 10 U.S.C. § 1408(c)(1) provided that:
Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.
Following the passage of this statute, in numerous cases, former spouses came into court seeking to apply the new provision to the partition of military retirement benefits after the parties had been divorced. These efforts met with varied responses from courts around the country.
In some states, efforts to reopen divorce cases to apply the new statute were found to be barred by res judicata or laches. In Tomlinson v. Tomlinson, 102 Nev. 652, 729 P.2d 1363 (1986), the parties were divorced in 1981. The judgment providing for distribution of property made no mention of the military pension. In 1986, the wife filed to obtain a partition of the pension. The Nevada court held that the wife's claim was barred by res judicata. The court held that because the wife did not raise the issue of the pension in 1971, she was precluded from the raising of the issue in 1986.[1]
Similarly, in Newman v. Newman, 558 So.2d 821 (Miss.1990), the husband retired in 1978. The parties divorced in 1982 and a property settlement was executed in 1983 *1160 which did not mention the military pension. The court held that a former wife who sought partition of a military pension six years after settlement of the community was barred by the doctrine of laches.
However, courts in California were extremely liberal in allowing the reopening of cases decided before McCarty, supra. In Casas v. Thompson, 42 Cal.3d 131, 228 Cal.Rptr. 33, 720 P.2d 921 (1986), the parties were divorced in 1966 but future military retirement benefits were not considered in dividing the community property. The husband retired in 1970. In 1980, the former wife filed suit for partition of retirement benefits. Following the rule in McCarty, the court held that the retirement was the husband's separate property. The former wife reopened the case after McCarty was legislatively overruled. The court held that the Uniformed Services Former Spouses Protection Act was intended to erase McCarty`s impact on all cases. Accordingly, the court ruled that the former wife was entitled to a portion of the retirement benefits accruing after the date of the filing of the complaint in 1980. The court reasoned that because the former wife had an interest in the pension at the time of the original decree, under California law, the former wife could bring an independent action to partition the community.
Apparently, in response to the flood of cases seeking to reopen pre-McCarty divorce cases in order to partition military pensions under the new law found in 10 U.S.C. § 1408(c)(1), Congress amended the statute to add the following phrase:
A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of a member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incidental to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.
The statutory notes to this amendment indicate that its purpose was to add "provisions relating to a prohibition on a court from treating retired pay as property in any proceeding to divide or partition any amount of retired pay if a final decree of divorce, etc., was ratified and issued before June [25], 1981, and did not treat any amount of retired pay of the member as retired pay of both the member and the member's spouse or former spouse."
The statutory notes to this provision further provide that the amendment adding the prohibition to 1408(c)(1) shall apply with respect to judgments issued before, on or after the date of the enactment of the act, November 5, 1990.
The legislative history of the amendment to 10 USC 1408(c)(1) is outlined in [1990] United States Code Congressional and Administrative News, 2931, 3166. That history provides:
The Supreme Court, in McCarty v. McCarty, 453 U.S. 210 [101 S.Ct. 2728] (1981) ruled that military retired pay could not be subject to division between the military member and the member spouse as part of a divorce proceeding absent a federal statute permitting such division. Congress subsequently passed USFSPA to permit the division of military retired pay under specified circumstances, and to provide certain other benefits to former spouses of retired members of the armed forces. The intent of Congress, as expressed in the legislative history, was for the new law to have prospective effect only. A number of courts, however, have interpreted the law differently, and have reopened pre-McCarty decisions in order to award a share of retired pay to former spouses. The house bill would provide that if a final decree of divorce, dissolution, annulment or legal separation was issued before the McCarty decision and did not treat military retired pay as the property of both the retired member and the former spouse, then the court, subsequent *1161 to McCarty, may not divide retired pay between the retired member and the former spouse. If a court, subsequent to McCarty, had entered such an order, the house bill would require the retired member make any payments that were due before the date of enactment of this bill, but the member would be relieved of the obligation to make any further payments.
The legislative history found in [1990] United States Code Congressional and Administrative News, 3004, also provides that after the enactment of the USFSPA, there was some concern that state courts had been less than faithful in their adherence to the spirit of that law:
The reopening of divorce cases finalized before the Supreme Court's decision in McCarty v. McCarty that did not divide retired pay continues to be a significant problem. Years after final divorce decrees have been issued, some state courts, particularly those in California, have reopened cases (through partition actions or otherwise) to award a share of retired pay. Although Congress has twice stated in report language that this result was not intended, the practice continues unabated. Such action is inconsistent with a notion that a final decree of divorce represents a final disposition of the marital estate.
The legislative history went on to provide that the amendment would specify:
[T]hat a court may not treat retired or retainer pay as property in any proceeding to divide or partition such pay of a member as property of a member and his spouse if a final decree of divorce, dissolution, annulment or legal separation (including court ordered, ratified or approved property settlements incident to such a decree) was issued before the McCarty decision and did not treat retired pay as property of the member and the member spouse or former spouse. This provision would apply to judgments issued before, on, or after the date of the enactment of this Act, but only with respect to any requirement to make payments pursuant to such judgments after the date of the enactment. Thus, individuals divorced before the McCarty decision who have had their cases reopened would not be relieved of the obligation to make payments until after the effective date of the Act.
The intent of the Congress in amending 10 U.S.C. § 1408(c)(1) was to prevent relitigation of cases concluded prior to McCarty. In the present case, the parties divorced on May 5, 1976, well before McCarty and before the critical date in the statute of June 25, 1981. The separation and divorce judgments in this case did not specifically treat or reserve jurisdiction to treat the military retirement benefits as property as required by the federal statute. We recognize that under the general principles of Louisiana law, once a court obtains jurisdiction in a divorce proceeding, it retains jurisdiction over incidental matters connected with the original proceeding, such as the partition of the community. However, in the instant case, the clear wording of the federal preemption statute requires a specific treatment of military retirement benefits in the division of a community or a specific reservation of jurisdiction to treat military retirement benefits as community property. It appears that the operation of general principles of continuing jurisdiction will not satisfy the federal statutory requirement.
Further, even though Mr. Johnson was not retired at the time of the divorce, he had been in the Air Force for 20 years and it was clear that at some point he would begin to receive military retirement benefits. We also note that at the time the parties were divorced in 1976, courts of this state had held that a wife was entitled to her community share of the husband's military retirement pay when the right to such benefits was acquired during the marriage. Swope v. Mitchell, supra. Accordingly, during the time period of the divorce, if Mrs. Johnson had felt that she was entitled to a portion of Mr. Johnson's military retirement benefits upon his retirement, she could have asserted her claim at that time.
Because the former judgments of separation and divorce in this case did not deal with the military retirement benefits and *1162 did not reserve jurisdiction to treat the retirement benefits as property under Louisiana law, this case comes squarely under the federal preemption of 10 U.S.C. § 1408(c)(1) precluding states from treating the military retirement benefits as property of the community.
Therefore, we sustain Mr. Johnson's peremptory exception. Under the facts of this case, we find that federal law preempts the classification and division of Mr. Johnson's military retirement benefits as community property. Accordingly, we affirm the trial court judgment denying Mrs. Johnson's claim to a portion of Mr. Johnson's military retirement benefits.[2]

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court denying the claim of Barbara Ann Johnson to a portion of the military retirements of her former spouse, Paul James Johnson. Costs are assessed to Mrs. Johnson.
AFFIRMED.
NOTES
[1] In 1987, the Nevada legislature passed NRS 125.161 which gave ex-spouses of recipients of military retirement benefits the right to partition the retirement benefits according to the time spent in military service during the marriage if the retirement proceeds had not been divided in the property agreement accompanying the divorce. This effectively reversed Tomlinson, supra. However, this statute was repealed in 1989 ostensibly reinstating the authority of Tomlinson, supra. See Taylor v. Taylor, 105 Nev. 384, 775 P.2d 703 (1989).
[2] Although we sustain Mr. Johnson's peremptory exception, we also find that the trial court correctly determined that Mr. Johnson was a domiciliary of West Virginia and properly applied West Virginia law to this case. Therefore, on this additional basis, Mrs. Johnson is not entitled to relief. Regarding domicile, see LSA-C.C. 46 and Trotter v. Trotter, 503 So.2d 1160 (La.App. 3rd Cir.1987). Regarding the application of West Virginia law, see Howard v. Howard, 499 So.2d 222 (La.App.2d Cir.1986) and Schueler v. Schueler, 460 So.2d 1120 (La.App.2d Cir.1984), writ denied 464 So.2d 318 (La.1985). Regarding the substance of West Virginia law as applied to this case see LaRue v. LaRue, 172 W.Va. 158, 304 S.E.2d 312 (1983); W.Va.Code § 48-2-36; Conner v. Conner, 175 W.Va. 512, 334 S.E.2d 650 (1985).